UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TAWANA S. WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:08-0057 |
| | ) | Magistrate Judge Bryant |
| BOYCE WILKINS, | ) | **Jury Demand** |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Following entry of judgment on a jury verdict, defendant Wilkins has filed his motion for new trial or in the alternative for a remittitur (Docket Entry No. 116). As grounds, defendant argues that (1) the jury's finding that defendant Wilkins "unreasonably seized" plaintiff was against the weight of the evidence; (2) that the jury's award of punitive damages was inconsistent with the jury's other findings and otherwise against the weight of the evidence; (3) that the amount of the jury's punitive damages award was excessive; (4) that the court committed error in instructing the jury under the Fourth rather than the Fourteenth Amendment; and (5) that the jury's verdict was a result of prejudice or bias.

Plaintiff Wilson filed her response in opposition (Docket Entry No. 124) and defendant filed a reply (Docket Entry No. 125-1).

For the reasons stated below, the Court **GRANTS** a remittitur of the punitive damage award or, alternatively at

plaintiff's election, a new trial on the issue of punitive damages.

## Legal Standard

The Court "may grant a new trial under Rule 59 if the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party." Rush v. Illinois Cent. R. Co., 399 F.3d 705, 727 (6th Cir. 2005) (citing Conte v. General Housewares Corp., 215 F.3d 628, 637 (6th Cir. 2000)). However, the "jury's verdict should be accepted if it is one which could reasonably have been reached." Id.

## Analysis

The Court has previously addressed defendant Wilkins's argument that the Court committed error in instructing the jury under the Fourth Amendment rather than the Fourteenth Amendment (Docket Entry No. 134 at 5), and, therefore, the Court **DENIES** defendant's Rule 59 motion for a new trial on that grounds for reasons previously stated. Otherwise, the Court will consider defendant's grounds for new trial as presented in his motion.

<u>That the jury's finding of a constitutional violation was against the weight of the evidence</u>. A new trial under Rule 59 is required only when "a jury has reached a seriously erroneous result as evidenced by [](1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings

2

being influenced by prejudice or bias." Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 405 (6th Cir. 2006) (citation and internal quotation marks omitted). If a reasonable juror could have reached the challenged verdict, however, a new trial is improper. Taylor v. TECO Barge Line, Inc., 517 F.3d 372 (6th Cir. 2008). "[C]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Barnes v. Owens-Corning Fiberglas Corp., 201 F.3d 815, 821 (6th Cir. 2000) (citation and internal quotation marks omitted).

The evidence presented at trial, and in particular the testimony of the plaintiff, was substantially consistent with the summary contained in the opinion of the Court of Appeals for the Sixth Circuit in the earlier interlocutory appeal of this case (Docket Entry No. 44 at 2-3). The Sixth Circuit affirmed the district court's denial of defendant's motion for summary judgment and its finding that a reasonable jury could conclude upon those facts that plaintiff Wilson had been unreasonably seized within the meaning of the Fourth Amendment by being confined by defendant in the front seat of his moving police vehicle. The Court here finds that a reasonable juror could have reached this conclusion, and therefore that a new trial is improper merely because a reasonable

3

jury could have drawn different inferences or conclusions. <u>Barnes</u>, 201 F.3d at 821.

<u>That the award of punitive damages was an inconsistent verdict or otherwise against the weight of the evidence</u>. Defendant Wilkins argues that the punitive damage award was inherently inconsistent with the jury's finding in favor of the defendant on the state law claims of assault and battery. Defendant states: "If Wilkins did not intentionally cause any fear to Wilson, if he did not intentionally unlawfully touch Wilson, and if the touching of Wilson's hands was not even an offensive physical contact, it defies logic that Wilkins's actions somehow supported an award of punitive damages."  (Docket Entry No. 117 at 5-6).

The Court finds, however, that there is no inherent inconsistency in the jury's verdict on these two claims.  The state law claims of assault and battery are separate and distinct from the constitutional claim of unreasonable seizure under the Fourth Amendment.  Although the jury apparently found that the evidence was insufficient to support a finding that defendant Wilkins assaulted or battered the plaintiff, as those terms are defined under state law, the jury found from the evidence that defendant Wilkins intentionally and unreasonably seized the plaintiff by confining her in his moving patrol car.  The Court finds no inherent inconsistency in these findings, and defendant Wilkins has cited no authority in support of this argument.  Therefore, the

4

Court finds that this argument is without merit.

<u>That the punitive damages award in this case was excessive</u>. The jury in this case found in favor of plaintiff Wilson on her claim of constitutional violation and in favor of defendant Wilkins on the state claims of assault and battery. The jury awarded $1.00 in compensatory damages and $80,000.00 in punitive damages. Defendant Wilkins argues that this punitive damage award is excessive.

Considering substantive constitutional limitations on punitive damage awards, the United States Supreme Court in the case of <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996), set forth three "guideposts" to be considered in deciding whether a punitive damages award is excessive: (1) "the degree of reprehensibility" of the conduct; (2) the disparity between the harm or potential harm suffered by plaintiff and her punitive damages award; and (3) the difference between the punitive damages and the civil penalties authorized or imposed in comparable cases. <u>Id.</u> at 575. The third factor is not at issue in this case.

In evaluating the first factor – the degree of reprehensibility of the conduct – courts should consider whether

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was a result of intentional malice, trickery, or deceit, or mere accident.

5

State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003). In general, the Supreme Court has further explained that "nonviolent crimes are less serious than crimes marked by violence or the threat of violence" and that "trickery and deceit are more reprehensible than negligence." Gore, 517 U.S. at 576 (citations and internal quotations omitted).

Evaluating these factors, the Court finds that the constitutional harm here was physical restraint rather than economic. Although the jury found that plaintiff was neither assaulted nor battered, as defined by state law, and that she suffered no physical or emotional injury supporting an award of compensatory damages, the jury nevertheless found that she was unreasonably seized by being physically confined in the front seat of defendant's police car. The Court finds that defendant's actions did not demonstrate an indifference or reckless disregard for plaintiff's health or safety, nor did the parties' respective financial resources play a role. Moreover, there was no evidence that the encounter between plaintiff Wilson and defendant Wilkins was anything but an isolated incident. Finally, the jury apparently found that defendant Wilkins intentionally deceived plaintiff in persuading her to enter his police car.

With respect to the second factor – the disparity between the harm or potential harm suffered by plaintiff and her punitive damage award – courts have typically considered the ratio between the amounts of compensatory damages, on one hand, and punitive

damages on the other.  The Supreme Court, however, has rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual *and potential* damages to the punitive award.  Gore, 517 U.S. at 582.  The court has further stated that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages."  Id.  Nevertheless, the court has stated that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."  State Farm, 538 U.S. at 425.

The Sixth Circuit and other courts have recognized that where injuries are without a ready monetary value, such as invasions of constitutional rights unaccompanied by physical injury or other compensable harm, higher ratios between compensatory or nominal awards and the punitive award are to be expected.  Romanski v. Detroit Entertainment, L.L.C., 428 F.3d 629, 645 (6th Cir. 2005) (citing Argentine v. United Steel Workers of Am., 287 F.3d 476, 488 (6th Cir. 2002)).  Although "necessarily unscientific," the Sixth Circuit has found that in at least one section 1983 case, "the best approach is to compare [the punitive damages award] to punitive awards examined by courts in other civil rights cases to find limits and proportions."  Romanski, 428 F.3d at 646 (internal quotations omitted).

7

Following a review of punitive damage awards in cases involving invasions of constitutional rights, the Sixth Circuit has reached two general conclusions: (1) "Substantial punitive awards in section 1983 cases . . . tend to accompany conduct that results in physical or psychological harm"; and (2) "in the typical section 1983 case in which punitive damages are awarded, the defendant is an individual police officer, not the police department or municipality (which, odds are, have deeper pockets than the officer), let alone a deep pocketed company . . . ." Arnold v. Wilder, 657 F.3d 353, 371 (6th Cir. 2011) (quoting Romanski, 428 F.3d at 646)).

Plaintiff in her motion papers argues that the case of Lee v. Edwards, 101 F.3d 805 (2nd Cir. 1996), is "particularly relevant to the case before this Court." (Docket Entry No. 124). In Lee, the Second Circuit vacated a punitive damage award of $200,000.00 against a defendant police officer and granted a new trial on the punitive damages issue unless plaintiff accepted a reduced punitive damages award of $75,000.00. Although the Lee case is a section 1983 action against a police officer, the court finds that the facts of the Lee case are materially different from those presented in the instant case. In Lee, the defendant officer is alleged to have beaten plaintiff with his baton after handcuffing plaintiff following a traffic stop. Plaintiff required medical treatment at a hospital for his injuries. In addition, the defendant policeman in Lee thereafter falsely charged plaintiff

8

with the offenses of assault on a police officer, a felony, and resisting arrest. Plaintiff sued the defendant officer for malicious prosecution, assault and battery and intentional infliction of emotional distress. The jury found in favor of plaintiff Lee on the malicious prosecution claim and on the assault and battery claim. The district court in ruling on post trial motions observed as follows: "It is possible that this element of intention – of a police officer *intentionally* submitting a false report that could lead to conviction of a serious felony – is what the jury sought to punish." Lee, 101 F.3d at 808.

The Court finds that several aspects of the Lee case make it clearly distinguishable and inapposite as a comparator to the instant case. First, the facts in Lee evidenced physical violence, including a finding that the defendant officer assaulted and battered plaintiff Lee while he was handcuffed.[1] No claim of physical violence is present in the instant case. Moreover, the officer in Lee falsely charged plaintiff with a felony offense, assault on a police officer. No charge was ever made against plaintiff Wilson. Finally, the parties in the Lee case stipulated, and the jury was so informed, that the City of Waterbury, the defendant's employer, would pay all damages awarded against the defendant. In contrast, in the instant case the parties agreed,

---

[1] The $200,000 punitive damages in Lee were awarded solely on account of plaintiff's malicious prosecution claim, as plaintiff waived his claim to punitive damages on the assault and battery claim, apparently for tactical reasons. Lee, 101 F.3d at 809-10 and fn. 3. Nevertheless, evidence of the assault and battery on plaintiff was part of the operative facts of the case.

9

and the jury was instructed, that defendant Wilkins was being sued in his individual capacity and his employer, the Metropolitan Nashville Police Department, was not a party to the case (Docket Entry No. 127 at 101). The Court finds that these important factual distinctions materially differentiate the instant case from the Lee case, and render Lee of little or no assistance in evaluating the punitive damages award.

Instead, the Court finds more compelling the case of Williams v. Kaufman County, 352 F.3d 994 (5th Cir. 2003), which was cited by the Sixth Circuit in both the Romanski case and the Arnold decisions. 428 F.3d at 647 and 657 F.3d at 370. In Williams, the defendant sheriff and his deputies detained plaintiffs in handcuffs for approximately three hours and subjected them to strip searches, all without probable cause, during the execution of a search warrant on a nightclub where plaintiffs were patrons. Following a bench trial, the court found that the sheriff's strip search of plaintiffs without probable cause constituted an unreasonable search under the Fourth Amendment. The court awarded each plaintiff nominal damages in the amount of $100.00 and punitive damages of $15,000.00 against Sheriff Harris in his individual capacity. On appeal, the Court of Appeals for the Fifth Circuit held that a punitive award of $15,000.00 per plaintiff was not unreasonable in light of the violations that occurred. Williams, 352 F.3d at 1016.

10

Although comparing the facts of one case to those of another is a necessarily unscientific approach, Romanski, 428 F.3d at 646, the Court finds that the Williams case is more helpful than the Lee case in assessing the punitive damages award in the instant case. First, the Williams case, like the instant case, involved no violent conduct, in contrast to the assault and battery finding in the Lee case. Although the instant case does not involve a strip search, which was found unconstitutional in Williams, both of these cases involve detention of the plaintiffs for a relatively short duration. In addition, the court in Williams, like the jury in the instant case, awarded only nominal compensatory damages. Finally, both the defendant sheriff in Williams and defendant Wilkins in this case were sued in their individual capacities, and neither case contained evidence that the defendants' respective employers would pay the judgments. For these reasons, the Court finds the Williams case to be more analogous to the instant case than Lee.

Comparing the instant case to the facts in Williams, the Court finds the conduct of defendant Wilkins relatively less reprehensible than that of the defendant sheriff in Williams. The plaintiffs in Williams were detained for a period of approximately three hours in handcuffs and subjected to an unconstitutional strip search. In contrast, the entire seizure of plaintiff Wilson lasted approximately five minutes from the time that defendant Wilkins's patrol car left plaintiff's home on Old Matthews Road until she jumped from the patrol car on Brick Church Pike (Docket Entry No.

11

127 at 67), and plaintiff Wilson was neither handcuffed nor searched. Using the $15,000.00 per plaintiff punitive damage award approved in Williams, the Court finds that the conduct of defendant Wilkins, in comparison, fairly warrants a punitive damage award of $7,500.00. As grounds for this finding, the Court relies upon the absence of any evidence of violence, or threat of violence, by defendant Wilkins, the very brief seizure of plaintiff Wilson approximating only five minutes, and the jury's finding that defendant Wilkins neither assaulted nor battered plaintiff Wilson during her confinement. Although admittedly a substantial remittitur from the jury's punitive damage award of $80,000.00, the Court notes that a reduced punitive damage award of $7,500.00 exceeds one-tenth of defendant Wilson's annual salary of approximately $69,000.00 (Docket Entry No. 127 at 84-85), and is sufficient to serve both as punishment and as a deterrent to similar conduct.[2]

For the foregoing reasons, the Court finds that the jury's award of $80,000.00 in punitive damages is excessive and shocks the conscience of the Court. The Court therefore **SUGGESTS** a remittitur of $72,500.00 and a reduction of the punitive damage award to the amount of $7,500.00. The Court also grants the plaintiff the option of agreeing to remit $72,500.00 and accepting a punitive damage award of $7,500.00 or, alternatively, proceeding

---

[2]The Court notes that in Romanski the Sixth Circuit approved a reduced punitive award approximating 60% of one day's revenue for the defendant casino. Romanski, 428 F.3d at 649-50.

12

with a new trial on the issue of punitive damages.  See Romanski, 428 F.3d at 650.

      <u>That the jury's verdict was a result of prejudice or bias</u>.  Defendant Wilkins argues that the jury's verdict was a product of prejudice or bias.  However, other than the amount of the punitive damages award discussed above, defendant Wilkins offers no evidence that the jury's verdict was improperly influenced.  Defendant does argue that permitting plaintiff to testify about her voice problems and display to the jury an itemized list of her medical expenses was "highly prejudicial to Wilkins." (Docket Entry No. 117 at 11).  However, this argument is seriously undermined by the jury's award of $1.00 in compensatory damages.  Finally, defendant argues that the closing argument by plaintiff's counsel was unduly prejudicial (<u>Id.</u> at 12-13). Nevertheless, defendant made no contemporaneous objection to this argument nor did he move for mistrial.  <u>Jones v. Illinois Central Railroad</u>, 617 F.3d 843, 852 (6th Cir. 2010).  For these reasons, the Court finds that defendant Wilkins's argument that the verdict of the jury was based upon prejudice or bias is without merit.

<u>**CONCLUSION**</u>

      For the reasons stated above in this memorandum, the Court **GRANTS** defendant Wilkins's motion for new trial or for remittitur (Docket Entry No. 116) and **SUGGESTS** a remittitur of the jury's punitive damage award of $72,500.00.  Plaintiff Wilson shall have the option of accepting a punitive damage award in the amount

13

Case 3:08-cv-00057   Document 137   Filed 03/13/12   Page 13 of 14 PageID #: 1049

of $7,500.00 or, in the alternative, proceeding with a new trial limited to the issue of punitive damages.

Plaintiff shall file a notice within ten days from the entry of this memorandum and order advising the Court whether she will accept the judgment as remitted or proceed to a new trial.

It is so **ORDERED**.

s/ John S. Bryant<br>
JOHN S. BRYANT<br>
United States Magistrate Judge